**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2045
_____

MICHAEL E. KEELING,
                              Appellant

v.

JOHN E. WETZEL, Secretary, Department of Corrections;
LAWRENCE MAHALLY, Warden, SCI Dallas; DR. BACH, Psychology Manager,
Department of Corrections; ROBERT MARSH, Chief of Psychology Manager,
Department of Corrections; LUCAS D. MALISHAK, Acting Director for Central Office,
State Department of Corrections; ANDREW LOPUHOVSKY, B/Block's Psychologist
for SCI-Dallas, Department of Corrections; MR. JASEN BOHINSKI, Unit Manager,
Department of Correction, SCI Dallas; MAJOR WHITE, Major of the Unit Manager's for
the Department of Corrections at SCI Dallas; BART JOSEFOWICZ, Unit Manager for
the Department of Corrections at SCI Dallas; DR. JEANNE RIMEHOUSE, Licensed
Psychologist/Psychiatrist for the Department of Corrections in Central Office;
MR. DEPIREO, Unit Manager for the Department of Corrections; MICHAEL KAYE,
Unit Manager for the Department of Corrections at SCI Dallas; MS. VERBALA, Unit
Manager for the Department of Corrections at SCI Dallas; DR. HOFFMAN, Licensed
Psychologist Manager, Department of Corrections at SCI Dallas; JENNIFER PAWLING,
Staff Assistant Eastern Region in Charge of SCI Dallas
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 1-18-cv-02195)
District Judge:  Honorable Jennifer P. Wilson
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 11, 2024

Before:  BIBAS, PORTER, and MONTGOMERY-REEVES, Circuit Judges

(Opinion filed: August 13, 2024)
_____

OPINION[*]
_____

PER CURIAM

Pro se appellant Michael Keeling appeals from the District Court's dismissal of his amended complaint. For the reasons provided below, we will affirm the District Court's judgment.

I.

In November 2018, Keeling brought a civil rights suit pursuant to 42 U.S.C. § 1983 against various prison officials and prison medical staff employed at SCI-Dallas in Pennsylvania. The defendants, in two groups, moved to dismiss the complaint. The District Court granted one motion for failure to state a claim and granted in part and denied in part the second motion.[1] Keeling thereafter filed an amended complaint against a smaller number of prison officials and medical staff. Specifically, Keeling alleged (1) an Eighth Amendment violation based on deliberate indifference to his medical needs, (2) a Fourteenth Amendment Equal Protection violation based on the denial of a single-occupancy cell, (3) a second Eighth Amendment violation based on the failure to protect,

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] A single claim survived dismissal. Keeling did not, however, reassert that claim in his Amended Complaint.

and (4) a retaliation claim.  The claims included in the amended complaint are based on various unrelated incidents that occurred while Keeling was incarcerated at SCI-Dallas.

After Keeling amended his complaint, a group of defendants (hereinafter the "Corrections Defendants") moved to dismiss.  After considering the motion to dismiss and screening the remaining claims against the medical defendants pursuant to 28 U.S.C. § 1915A, the District Court dismissed the amended complaint.  In doing so, the District Court adopted the Magistrate Judge's thorough Report and Recommendation ("R&R"), which concluded that Keeling had failed to state a claim, on each of his claims, pursuant to 28 U.S.C. § 1915A(b)(1), 42 U.S.C. § 1997e(c)(1), and Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Keeling moved for reconsideration.  The District Court granted his motion for reconsideration in order to consider his objections to the R&R, but ultimately adopted the R&R in its entirety and dismissed the complaint.  Keeling appeals.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291.  We apply the same de novo standard of review to the grant of a motion to dismiss and to a sua sponte dismissal of a complaint under 28 U.S.C. § 1915A.  Dooley v. Wetzel, 957 F.3d 366, 373–74 (3d Cir. 2020); Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000).  We may affirm on any basis supported by the record.  See Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam).

## III.

To state an Eighth Amendment claim based on inadequate medical care, a plaintiff must allege acts or omissions by prison officials that indicate deliberate indifference to a

3

serious medical need. Estelle v. Gamble, 429 U.S. 97, 104–05 (1976); Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). A plaintiff may show deliberate indifference by establishing that the defendants "intentionally den[ied] or delay[ed] access to medical care." Estelle, 429 U.S. at 104–05. Defendants in civil rights actions "must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." Baraka v. McGreevey, 481 F.3d 187, 210 (3d Cir. 2007) (quotation marks and citations omitted).

Both the Magistrate Judge and the District Court construed Keeling's deliberate indifference claim as alleging that the reclassification of his mental health stability code from "B" to "C,"[2] without his consent or notification, violated his Eighth Amendment rights. The Magistrate Judge concluded that Keeling did not have a constitutional right to be assigned a particular mental health stability code and the District Court agreed and sua sponte dismissed the claim. Keeling however, both here and in the District Court, has made clear that this claim was mischaracterized and that he also intended to bring a claim based on the denial of mental health care for a period of approximately four or five years. See Motion for Reconsideration, Dkt No. 93, at 5 ("[P]laintiff's FOCAL POINT deals directly with the defendant's denial of [m]ental [h]ealth [c]are/evaluation for nearly five

---

[2] Although Keeling fails to address the difference between a "B" and "C" stability code in his amended complaint, Keeling has subsequently indicated that a prisoner's stability code determines the amount of mental health supervision a prisoner receives. While Keeling's amended complaint included the allegation that his stability code was switched from a "B" to a "C," he has later alleged that it was switched from a "C" to a "B," implying *less* supervision.

4

(5) year[s].”); Appellant's Brief, 3d Cir. ECF No. 15, at 5 (claiming that the District Court "falsely alleg[ed that] petitioner was challenging a stability level" and argues that his claim is based on the "[f]ailure to evaluate petitioner's [m]ental [h]ealth [c]are (evaluation) for nearly five [years]").[3]  The District Court did not address this argument.

In his amended complaint, Keeling provides few allegations regarding the denial of mental health care.  For example, Keeling alleged that he endured "at least (4) year[s] without any [m]ental [h]ealth care evaluations," Am. Compl. Dkt No. 67, at 6 ¶ 28; that the period of denial of mental health care began in April of 2009, id. at ¶ 29; and that he was unable to receive mental health care even after filing a grievance, id. at ¶ 32. Assuming arguendo that Keeling has sufficiently alleged that he has a serious medical need, he has not sufficiently alleged that any of the defendants interfered with his care or were otherwise involved in the acts or omissions that resulted in his not being evaluated or otherwise treated.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs[.]").  Keeling's vague references to the conduct of unknown defendants are

---

[3] To the extent Keeling asserted an Eighth Amendment claim based on the reclassification of his mental health stability code in the District Court, he has abandoned it on appeal. Appellant's Brief, 3d Cir. ECF No. 15, at 5 ("Petitioner[ ] by no-means was/is challenging the Defendant's [c]hange of a [s]tability [l]evel from a 'C to B.'").

insufficient to constitute allegations that state an Eighth Amendment claim.[4] See Baraka, 481 F.3d at 210.[5]

IV.

In support of his Equal Protection claim, Keeling alleges that his rights were violated when he was denied a single-occupancy cell, while 133 similarly situated inmates were given single-occupancy cells. Because Keeling has not alleged that he was a member of a protected class, his Equal Protection claim must be premised on a "class-of-one" theory, which requires him to allege, at a minimum, "that he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment." Phillips v. Cty. of Allegheny, 515 F.3d 224, 243 (3d Cir. 2008). We agree with the District Court that Keeling's bare and conclusory allegations, without more, are insufficient to state a plausible claim for relief. See Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009); see also Fowler v. UPMC Shadyside, 578

---

[4] To the extent that Keeling argues that Defendants Rinehouse and Hoffman were personally involved with the denial of mental health care, we conclude that the allegations pertaining to them are more properly construed as a mere disagreement regarding the proper course of treatment. Therefore, these allegations are insufficient to state an Eighth Amendment violation. Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (citing Monmouth Cty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987)); see also Pearson v. Prison Health Serv., 850 F.3d 526, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care.").

[5] Finally, to the extent that Keeling argues that his Eighth Amendment claim was asserted against non-medical defendants, he has not stated a claim since non-medical prison officials are not chargeable with deliberate indifference "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." Spruill, 372 F.3d at 236. Keeling has made no such allegations against the non-medical defendants.

F.3d 203, 211 (3d Cir. 2009) (explaining that "all civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation" (internal citations and quotations omitted)).

V.

To successfully plead a failure-to-protect claim under the Eighth Amendment, a plaintiff must show: "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." See Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997); Farmer v. Brennan, 511 U.S. 825, 834 (1994). In support of his failure-to-protect claim, Keeling alleges that defendants failed to take "the proper [precautionary] measure[s]" to prevent inmate violence against him. Am. Compl., Dkt No. 67, at 9 ¶¶ 50–51. He alleged that the inmate violence he suffered was not "an isolated incident" and that he warned two correctional officers that he was in physical danger of violence from his cellmate. Id. Regarding his allegations against Defendant Josefowicz, Keeling claims that he had a "face to face discussion with Mr. Josefowicz on July 9, 2017[,] about hav[ing] inmate on inmate violence with my cellmate." Id. at 9 ¶ 55. The District Court concluded that these allegations were insufficient to state an Eighth Amendment claim because Keeling failed to articulate a substantial risk of harm and failed to show that defendant was deliberately indifferent to any such risk.

We agree with the District Court that Keeling's amended complaint does not suggest that the defendants "acted or failed to act despite [their] knowledge of a substantial risk of serious harm." Farmer, 511 U.S. at 842. His allegations do not indicate that his cellmate made specific threats of serious harm, describe a history of

7

physical conflict with that cellmate, or otherwise suggest that a substantial risk of being attacked by his cellmate was "longstanding, pervasive, well-documented or expressly noted by prison officials in the past," id. Although Keeling asserts that the 2017 assault by his cellmate was "not a isolated incident," [sic] Am. Compl., Dkt No. 67, at 9 ¶ 51, the only other assault he refers to occurred in 2015 and nothing in his amended complaint suggests that the two events were related – or even that the same cellmate was his assailant.[6]

Finally, we discern no error in the District Court's conclusion that Keeling did not allege that Defendant White had any knowledge of the risk of harm to Keeling before the July 2017 incident or was otherwise personally involved. See Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

## VI.

To state a claim for retaliation, Keeling needed to allege "(1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (internal quotation marks omitted) (quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)). To be an adverse action, the challenged conduct need only cause "more than [a] *de minimis*" adverse consequence for

---

[6] We agree with the District Court that Keeling's allegations against Defendant Bohinski related to the 2015 assault are barred by the applicable statute of limitations. See 42 Pa. Cons. Stat. Ann. § 5524(2); Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009).

8

a prisoner. <u>Watson v. Rozum</u>, 834 F.3d 417, 423 (3d Cir. 2016) (alterations in original) (quoting <u>McKee v. Hart</u>, 436 F.3d 165, 170 (3d Cir. 2006)). Here, Keeling alleged two instances of retaliation: (1) that he was transferred to a different cell block by Defendant Bohinski for filing a grievance against him, and (2) that he was denied housing in a wellness program housing unit by Defendant Josefowicz for filing a grievance against him.

We agree with the District Court's conclusion that Keeling failed to state a retaliation claim against either defendant because he did not demonstrate that Defendants Bohinski's and Josefowicz's decisions constituted adverse actions. <u>See</u> <u>Allah v. Seiverling</u>, 229 F.3d at 225. Here, Keeling's allegations of transfer to a different cell block and failure to provide the opportunity to transfer to a "wellness" cell block do not constitute adverse actions "sufficient to deter" an ordinary person from filing a grievance. For example, Keeling has failed to explain why the block he was transferred to was worse than the block he was previously housed in. Additionally, Keeling has failed to show that the denial of his request to a more favorable cell (and instead being placed on a waiting list) is anything more than de minimis harm.

VII.

Accordingly, we will affirm the judgment of the District Court.[7]

---

[7] We additionally conclude that providing the opportunity for further amendment would have been futile and therefore dismissal with prejudice was appropriate. <u>See</u> <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002). Specifically, Keeling was previously provided the opportunity to amend his initial complaint regarding the same claims he presented in his amended complaint, but failed to address the pleading deficiencies pointed out in the initial dismissal.